## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 11 2020, 8:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anthony C. Lawrence
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Sarah D. Haynes,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 11, 2020

Court of Appeals Case No.
20A-CR-1466

Appeal from the Henry Circuit
Court

The Honorable Bob A. Witham,
Judge

Trial Court Cause No.
33C01-2002-F5-18

**Tavitas, Judge.**

## Case Summary

Following Sarah Haynes' entry of a guilty plea, she appeals her three-year sentence for intimidation with a deadly weapon, a Level 5 felony. We affirm.

## Issues

Haynes raises two issues on appeal, which we restate as follows:

I. Whether the trial court overlooked a significant mitigating factor.

II. Whether Haynes' sentence is inappropriate in light of the nature of the offense and Haynes' character.

## Facts[1]

On February 23, 2020, Haynes' sister, Kailee Haynes ("Kailee"), drove their mother, Pamela Edwards, to Edwards' home in New Castle, Indiana. Two of Haynes' children were in the back seat of the vehicle. The children, who were then fourteen and ten years of age, remained in the vehicle as Kailee assisted her mother into the house. Haynes was in the house when P.E. and Kailee entered.

While Kailee was inside, Haynes exited the house and climbed into the front seat of Kailee's vehicle. Haynes had not seen the children for an extended

---

[1] The facts are largely gleaned from the probable cause affidavit and pre-sentence investigation report ("PSI").

period of time. Haynes engaged the children in conversation and held one child's arm. Both children were upset by the interaction. One child exited the vehicle and pulled Haynes away from the other child, who was still inside the vehicle.

[5] Kailee emerged from the house and told Haynes that Haynes was not allowed access to the children. Haynes exited the vehicle, shouted obscenities at Kailee, and struck Kailee's face and head multiple times. Haynes then retrieved a knife from P.E.'s porch and told Kailee, "[B]****, your [sic] not going to wake up from this." Haynes' App. Vol. II pp. 16-17. Haynes only dropped the knife after P.E. and Haynes' boyfriend intervened. Haynes continued to strike Kailee in the face and head. The police were notified. Haynes admitted to the police that she fought Kailee and that Haynes held a knife during the altercation. Haynes, however, represented that the knife was a small keychain knife, which was contradicted by both Kailee and Haynes' boyfriend.

[6] On February 24, 2020, the State charged Haynes with intimidation, a Level 5 felony, and two counts of domestic battery committed in the presence of a child less than sixteen years old, Level 6 felonies. On March 3, 2020, the State and Haynes tendered a plea agreement to the trial court wherein Haynes would plead guilty to intimidation, a Level 5 felony, in exchange for the State's agreement to: (1) dismiss the domestic battery counts; and (2) the imposition of a sentence "cap[ped]" at three years. Haynes' App. Vol. II p. 34.

The trial court conducted Haynes' sentencing hearing on July 7, 2020. At the hearing, Haynes apologized to Kailee. Also, Haynes answered affirmatively when defense counsel asked whether "emotions were running high" and whether Haynes "lost a little bit of control" because the dispute involved Haynes' children. Tr. Vol. II p. 8. In remarks to the trial court, Haynes stated: "I need to get into some kind of treatment and maybe some anger management. I need to see a counselor so I can get back re-acquainted with my kids. That was a Court order that I had out of Delaware County and that I have yet to do." *Id*. at 9. Additionally, Haynes testified that she: (1) had been sober for four months; (2) was taking Suboxone to manage her substance abuse; (3) did not require in-patient substance abuse treatment; and (4) attributed her problems to the lack of anger management treatment and counseling. Haynes did not present evidence regarding her mental health history or diagnoses; and Haynes did not argue the existence of any mitigating factors to the trial court.

The State elicited Haynes' testimony that a family court judge ordered Haynes to undergo counseling in March 2019, which Haynes did not complete. In the following exchange, Haynes acknowledged past mental health issues:

> Q: Have you ever received a mental health evaluation or recommendation?
>
> A: [ ] I have been in psychiatric wards and things of that nature. With me being all the way sober now I feel that I could do something with myself having this long of a time [without abusing] substances.

*Id.* at 10.

[9]     In imposing its sentence, the trial court found Haynes' prior criminal history and previous "violat[ions] [of] conditions of probation, parole or pardon" to be aggravating factors and identified Haynes' acceptance of responsibility as a mitigating factor. Haynes' App. Vol. II p. 57. The trial court also found Haynes' entry of a guilty plea to be a diminished mitigating factor that was offset by the State's agreement to a three-year advisory sentence cap on sentencing. The trial court found that the aggravating factors outweighed the mitigating factors and warranted an enhanced sentence but for the State's agreement to a "capped" advisory sentence. The trial court imposed the advisory sentence of three years executed in the Department of Correction ("DOC") and "recommended" that Haynes undergo counseling and/or treatment for her anger management, mental health, and substance abuse issues in the DOC. *Id.* Haynes now appeals.

## Analysis

### I.     *Mitigating Factors*

[10]    Haynes argues that the trial court abused its sentencing discretion by failing to find Haynes' mental health to be a significant mitigating factor. As the State argues, Haynes has waived this issue by her failure to argue it below. *See Banks v. State*, 841 N.E.2d 654, 659 (Ind. Ct. App. 2006) (defendant waived claims of error regarding the trial court's failure to identify mitigating circumstances because defendant failed to raise them at the sentencing hearing), *trans. denied.*

[11] Waiver nothwithstanding, Haynes' claim fails. "[S]ubject to the review and revise power [under Indiana Appellate Rule 7(B)], sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id*. at 490-91.

[12] A trial court is not obligated to accept a defendant's claim as to what constitutes a mitigating circumstance. *Rascoe v. State*, 736 N.E.2d 246, 249 (Ind. 2000). A trial court has discretion to determine whether the factors are mitigating, and it is not required to explain why it does not find the defendant's proffered factors to be mitigating. *Haddock v. State*, 800 N.E.2d 242, 245 (Ind. Ct. App. 2003). A claim that the trial court failed to find a mitigating factor requires the defendant to establish that the mitigating factor is significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493.

[13] "Mental illness is not necessarily a significant mitigating factor; 'rather, [it] is a mitigating factor to be used in certain circumstances, such as when the evidence

demonstrates longstanding mental health issues or when the jury finds that a defendant is mentally ill.'" *Townsend v. State*, 45 N.E.3d 821, 831 (Ind. Ct. App. 2015), *trans. denied*. "[I]n order for a [defendant's] mental history to provide a basis for establishing a mitigating factor, there must be a nexus between the defendant's mental health and the crime in question." *Weedman v. State*, 21 N.E.3d 873, 894 (Ind. Ct. App. 2014), *trans. denied*. Our Supreme Court has identified the following factors that bear on the weight, if any, that should be given to mental illness in sentencing: (1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) the overall limitations on functioning; (3) the duration of the illness; and (4) the extent of any nexus between the disorder or impairment and the crime. *Archer v. State*, 689 N.E.2d 678, 685 (Ind. 1997).

[14] Here, despite Haynes' failure to argue below that her mental health history was mitigating, the trial court's sentencing recommendation indicates that the court considered Haynes' mental health in imposing its sentence. Ultimately, in its sound discretion, the trial court found that Haynes' mental health issues lacked enough mitigating weight to overcome the aggravating factors.

[15] Although the record demonstrates that Haynes suffers from mental health issues, Haynes failed to: (1) present any argument or evidence to support her contention on appeal that a nexus existed between the offense and her diagnosed mental health conditions; or (2) demonstrate that her mental health conditions affected her ability to control her impulses or impaired her faculties with respect to the crime. *See Weedman*, 21 N.E.3d at 894 (finding no abuse of

the trial court's discretion in failing to identify Weedman's mental health as a mitigating circumstance where he failed to show a nexus between his mental health and the offense). To the contrary, Haynes testified that emotions simply ran high and she lost control due to her need for anger management treatment and counseling.[2] Haynes' testimony is not sufficient to establish the requisite nexus. Thus, the trial court's determination that Haynes' mental health history was not a mitigating factor is not against the logic and effect of the facts and circumstances before the trial court. Accordingly, we find no abuse of discretion.

## II. *Indiana Appellate Rule 7(B)*

[16] Haynes also argues that her sentence is inappropriate pursuant to Indiana Appellate Rule 7(B). The Indiana Constitution authorizes independent appellate review and revision of a trial court's sentencing decision. *See* Ind. Const. art. 7, §§ 4, 6; *Jackson v. State*, 145 N.E.3d 783, 784 (Ind. 2020). Our Supreme Court has implemented this authority through Indiana Appellate Rule 7(B), which allows this Court to revise a sentence when it is "inappropriate in light of the nature of the offense and the character of the offender." Our review of a sentence under Appellate Rule 7(B) is not an act of second guessing the trial court's sentence; rather, "[o]ur posture on appeal is [ ] deferential" to the

---

[2] In the PSI, Haynes acknowledged her mental health diagnoses but did not link her predicament to her mental health issues. *See* Haynes' App. Vol. II p. 48 ("[Haynes] believes her current mental state is good.").

trial court. *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016) (citing *Rice v. State*, 6 N.E.3d 940, 946 (Ind. 2014)). We exercise our authority under Appellate Rule 7(B) only in "exceptional cases, and its exercise 'boils down to our collective sense of what is appropriate.'" *Mullins v. State*, 148 N.E.3d 986, 987 (Ind. 2020) (quoting *Faith v. State*, 131 N.E.3d 158, 160 (Ind. 2019)).

[17] "'The principal role of appellate review is to attempt to leaven the outliers.'" *McCain v. State*, 148 N.E.3d 977, 985 (Ind. 2020) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008)). The point is "not to achieve a perceived correct sentence." *Id*. "Whether a sentence should be deemed inappropriate 'turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case.'" *Id*. (quoting *Cardwell*, 895 N.E.2d at 1224). Deference to the trial court's sentence "should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[18] When determining whether a sentence is inappropriate, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014). A reviewing court is thus "unlikely to consider an advisory sentence inappropriate." *Shelby v. State*, 986 N.E.2d 345, 371 (Ind. Ct. App. 2013), *trans denied*. Rather, the defendant "bears a particularly heavy burden in persuading us that his sentence

is inappropriate when the trial court imposes the advisory sentence." *Fernbach v. State*, 954 N.E.2d 1080, 1089 (Ind. Ct. App, 2011), *trans. denied.* Here, Haynes pleaded guilty to intimidation with a deadly weapon, a Level 5 felony. The sentencing range for a Level 5 felony is between one and six years, with an advisory sentence of three years. Ind. Code § 35-50-2-6(b). Here, the trial court honored the parties' agreement that Haynes' sentence should be capped and imposed a three-year advisory sentence.

[19] Our analysis of the "nature of the offense" requires us to look at the nature, extent, and depravity of the offense. *Sorenson v. State*, 133 N.E.3d 717, 729 (Ind. Ct. App. 2019), *trans. denied.* The nature of the instant offense is as follows: after being told by Kailee that Haynes was not allowed to be in the presence of Haynes' children, Haynes repeatedly struck Kailee in the face and head in the children's presence. Haynes then retrieved a knife and told Kailee, "[B]****, your [sic] not going to wake up from this." Haynes' App. Vol. II pp. 16-17. Haynes only dropped the knife after others intervened. Even after she was disarmed, Haynes continued to strike Kailee's face and head.

[20] Our analysis of the character of the offender involves a "broad consideration of a defendant's qualities," *Adams v. State*, 120 N.E.3d 1058, 1065 (Ind. Ct. App. 2019), including the defendant's age, criminal history, background, and remorse. *James v. State*, 868 N.E.2d 543, 548-59 (Ind. Ct. App. 2007). Moreover, "[t]he significance of a criminal history in assessing a defendant's character and an appropriate sentence varies based on the gravity, nature, proximity, and number of prior offenses in relation to the current offense."

*Sandleben v. State*, 29 N.E.3d 126, 137 (Ind. Ct. App. 2015) (citing *Bryant v. State*, 841 N.E.2d 1154, 1156 (Ind. 2006)). "Even a minor criminal history is a poor reflection of a defendant's character." *Prince v. State*, 148 N.E.3d 1171, 1174 (Ind. Ct. App. 2020) (citing *Moss v. State*, 13 N.E.3d 440, 448 (Ind. Ct. App. 2014), *trans. denied*).

[21] The record reveals that Haynes was thirty-eight years old at the time of sentencing. Haynes is a mother of four children; has not been employed since 2018; has relied on her family for financial support; and owed a child support arrearage of $3,000.00 when the PSI was prepared. In March 2019, a family court ordered Haynes to undergo anger management counseling and/or treatment, which she had yet to complete at the time of the sentencing hearing in the instant case. Although Haynes expressed remorse to Kailee at the sentencing hearing, Kailee told the trial court that Haynes' "erratic behavior is becoming something to expect" and requested the imposition of a maximum sentence. *See* Haynes' App. Vol. II p. 51. Haynes has been diagnosed with "Bi-Polar Disorder, Schizoaffective Disorder, and Identity Disorder[,]" but Haynes maintains that she is in "good" mental health. *Id*. at 48.

[22] Haynes' adult[3] criminal history includes three felony convictions and five misdemeanor convictions. Haynes has been convicted of dealing in a Schedule IV controlled substance, a Class C felony (2008); conversion, Class A

---

[3] Haynes has no juvenile criminal history.

misdemeanors (2011, 2013, 2017); theft, a Class A misdemeanor (2015); unlawful possession of a syringe, Level 6 felonies (2017, 2019); and criminal mischief, a Class B misdemeanor (2019). Courts have shown leniency by granting Haynes suspended sentences, formal probation, and community corrections placements. Haynes, however, has repeatedly violated probation, and her probation, home detention, and suspended sentences have been revoked on numerous prior occasions. The PSI also documents Haynes' longtime substance abuse issues. Haynes admits that she has a methamphetamine dependency, abused opiates from age fourteen to twenty-seven, and used marijuana three times a week.

[23] Despite ample opportunities to change her behavior and undergo treatment, Haynes has not addressed her longstanding anger issues, undergone substance abuse treatment, or refrained from criminal activity. Haynes' violent attack on a family member with a deadly weapon in the presence of her children does nothing to persuade us that her three-year advisory sentence is inappropriate.

## Conclusion

[24] The trial court did not abuse its sentencing discretion, and Haynes' advisory sentence is not inappropriate. We affirm.

[25] Affirmed.

Bailey, J., and Robb, J., concur.